# Causler v. Wharton, Adm'r.

### Bill in Equity to settle Partnership.

1. *Partnership; how may be created.*—In general, neither writing nor any other particular form is essential to the formation of a trading or laboring partnership, and like other contracts, it may be implied from conduct and circumstances, if significant and expressive enough to convince the mind of the intent and assent of the parties to the formation of that relation.

2. *Same; when equity will decree settlement of accounts of.*—It may be that under the statute of frauds, a partnership for the purchase and sale of lands as a business, is required to be in writing; but whether this be so or not, where partners, as an incident to their business, purchase and hold lands and pay for them with partnership funds, equity will treat such lands as moveable partnership property, whenever necessary for payment of debts, or the settlement of accounts between the partners.

3. *Statute of limitations; when commences to run.*—Where the partnership affairs are unsettled on a dissolution, and one partner, by written agreement with the other, leaves the partnership assets with him to dispose of, whenever

he can do so at a fair price, a continuing trust is thereby created, and the bar of the statute of limitations will not begin to run against the right to an account of the partnership dealings, so long as the parties to whom the assets were delivered acts under the trust, or admits that it is still continuing.

4. *Witness ; who, not competent.*—A former partner seeking an account and settlement of the partnership dealings against the administrator of a deceased partner in such case, is not a competent witness, in his own behalf, to prove any transaction by or statement with deceased, unless first called to testify thereto by the opposite party; and the fact that he was interrogated by the defendant as to *other* matters, does not vary the rule.

APPEAL from Etowah Chancery Court.

Tried before Hon. N. S. GRAHAM.

The bill in this case was filed by the appellant, Thomas H. Causler, against the appellee, W. C. Wharton, who is the administrator, and against the heirs of O. P. Hill, deceased. Its object is to have the affairs of a partnership, which had formerly existed between the appellant and Hill, settled and determined. The bill avers, and the proof shows, that the appellant and Hill, under the name of O. P. Hill & Co., commenced business as partners, doing a retail liquor business in 1847. The bill also avers that the partnership "traded in groceries, dry goods and other wares and merchandise, live stock, some slaves and some real estate." The bill also charges, and the proof shows, that some time in the year 1859, the partnership was dissolved and it was agreed that Hill was to "keep in his possession all the notes and accounts due the firm, as well as those running to maturity, and collect the same, and out of the proceeds to first pay the debts of the firm," and on the 9th day of January, 1860, Hill executed and delivered to appellant the following writing : "Whereas, the firm heretofore existing, known as the firm of O. P. Hill & Co., has been dissolved, and Thomas H. Causler being a member of said firm of O. P. Hill & Co., and as there is yet an undivided interest not disposed, of some of said property or effects in the name of O. P. Hill, and some in the name of O. P. Hill & Co., the interest in said property being equal, and the said Thomas H. Causler, desirous of removing west, leaves all of said property in the hands of his former partner to be sold, whenever he, the said O. P. Hill, can or may be able to do so at fair prices." Following this is a list of the property thus left in Hill's hands, which consists of lands and slaves and store-houses. The bill avers, and the answer admits, that Hill had sold portions of the property embraced in this agreement and had received the purchase-money, and made title to the purchasers. These sales are approved, and an accounting for the proceeds is prayed. It is also shown that Hill had collected various sums of money due the partnership, and that

no accounting and settlement of the partnership had been had.

Some of the property which had belonged to said firm, is averred and shown to be still unsold and the title thereto in the name of Hill. As to such portion of the lands a partition is prayed. It was shown that Hill had made sales of some of the lands as late as 1869 or 1870, and that he had received rents up to the time of his death in 1871. It was also shown that soon after the execution of the agreement Causler left the State of Alabama and resided in the State of Texas until after the death of Hill, which took place in 1871 or 1872.

The chancellor at first ordered an account between the parties, and on this reference much testimony was introduced as to the general partnership affairs of Hill & Co., and as to Hill's action in relation to partnership affairs after Causler left the State. Causler was introduced by the defendant, Wharton, to prove the books of O. P. Hill, and after having testified that they were genuine and that he could perceive no alteration in it, he was asked, on cross-examination, the following question: "After the dissolution of the firm, in whose possession did these books go?" Respondent objected to this question, upon the ground that the witness was introduced to prove specific matters, and that the complainant had a right only to cross on what was brought out on direct examination. The Register overruled the objections, and respondent excepted. Witness then stated that he "left the books and all property of the partnership in the possession of Hill, who was to collect, close up the business of the firm and settle its indebtedness, &c. The proceeds were to be divided equally between us. The money on hand was kept by Mr. Hill to pay debts. He gave me $1,800.00 out of the concern as part of my share. Hill obligated himself to give me $1,800.00 at a certain time. If he did not have it belonging to the firm, he was to pay it out of his own funds, or I would give him the same amount. I got the $1,800.00 in the winter of 1859. It was not paid me for my interest in notes and accounts of O. P. Hill & Co. Hill did not give the $1,800.00 and one half interest in the lands mentioned in the bill for my interest in the notes and accounts of the firm." Witness was asked to explain how Mr. Hill was to be reimbursed after paying the $1,800.00, and answered, "I do not know how it was."

The report of the testimony taken on the reference shows that the books of O. P. Hill & Co., and certain letters from Hill to Causler were introduced in evidence, but they do not appear from the transcript. One Woodliff, a witness for

[Causler v. Wharton, Adm'r.]

respondent, having testified to the sale of a negro by him to one of the firm of Hill & Co., and that he was unable to state to which one of the firm the sale was made, and that although he owed Hill & Co., he received the full price of the negro without any reduction, on account of his indebtedness to the firm, stated that Hill had informed him in 1867 that he (witness) owed Hill & Co., Hill & Sulser, and O. P. Hill.

The account, as stated by the Register, charged Hill's estate with his gross receipts of the partnership property, of all kinds, amounting in all to $10,525.71, and gave him credits for disbursements to the amount of $2,636.77, which does not include the $1,800.00 paid by him to Causler just before the latter left the State in 1860. Causler is charged with receipts of partnership property to the amount of $2,183.56, which includes the $1,800.00 received of Hill, and is credited with expenditures on partnership account of $22,594. The amount received by each, less his credits, is added together, that sum divided by two and the net receipts of Causler taken from his share as thus determined, and a balance reported in his favor of a little over three thousand dollars.

The chancellor, on final hearing, dismissed the bill, and the complainant brings the case here by appeal.

WATTS & SONS, for appellant.—The written instrument, signed by Hill, shows that he held the property in strict trust. A court of equity has exclusive jurisdiction over the trust and the partnership transactions. Under these circumstances there was no room for the statute of limitations, until there was some renunciation of the trust and an adverse holding brought home to the knowledge of Causler.— 8 Porter, 211; 3 Ala. 756; 14 Ala. 315; 9 Leigh, 245; 8 Bligh, 352; 3 How. (U. S.) 333. Even if the instrument set out does not create the relation of trustee and *cestui que trust*, but only that of the tenants in common, the Chancery Court had exclusive jurisdiction to settle such matters, and the statute of limitations cannot apply.—2 Dev. Eq. 264; *Autry v. Freeze.*

AIKEN & MARTIN, *contra.*—The statute of limitations is a bar to the account sought by the bill.—*Bradford v. Spykers*, 32 Ala. 134; 12 Peters, 300; 6 Peters, 151; 11 Vesey, 286. The agreement made Hill and Causler tenants in common of the property embraced in it.—6 Pick. 374; 6 Serg. & Rawle, 338. The accounts for property, alleged to have been disposed of by Hill, are not sufficiently complex to justify the interference of a court of equity, and the complainant has a

plain and adequate remedy by a suit at law in such instrument for its breach.—2 Brick. Dig. § 3, page 309.

STONE, J.—There appears to be no question that the copartnership first formed between Causler and Hill, had for its aim and scope the sale of liquors by retail. We think exhibit A to the bill shows that the partnership business was afterwards much enlarged, and that the copartners entered into a trading business, embracing lands and shares. Neither writing, nor any other particular form need be observed in the formation of a trading or laboring partnership. Mutual consent of two or more competent minds can make this, as it can make other contracts. And, like most other contracts, it may be implied from conduct and circumstances, if significant and expressive enough to convince the mind. There may be an exception to the generality of the foregoing remarks, in the matter of partnerships formed for the purchase and sale of lands, as a business. The statute of frauds may require that these shall be in writing.—See *Smith v. Burnham*, 3 Sumner, 435. But when partners, as an incident to their business, purchase and hold lands, and pay for them with partnership effects, equity treats such lands as moveable partnership property is treated, whenever it may be necessary for the payment of debts of the firm, or, for the adjustment and equalization of accounts between the partners.—*Dyer v. Clark*, 5 Metc. Mass. 562; 3 Kent's Com. margin 37 and note 3; *Hany, Adm'r v. Parmer*, August, 1877, in manuscript; *Howard v. Priest*, 5 Metc. Mass. 582. But we need not inquire whether this contract was originally formed, so as to bring the lands and their proceeds within the principles which govern partnerships. The agreement of Mr. Hill—exhibit A to the bill—takes the transaction without the influence of the statute of frauds, if it ever fell within it.—See, also, on the question of the equity of this bill, *Sanders v. Robertson*, in manuscript, Sept. 1877.

"Partnership, as between the parties themselves, is a voluntary contract between two or more persons for joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a communion of profits between them, and for the purpose of carrying on a legal trade, business or adventure."—Collyer on Part. by Perkins, § 3. Chancellor Kent says: "Partnership is a contract of two or more competent persons to place their money, effects, labor and skill, or some, or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions."—3 Comm. marg. 23. We think it is fully shown that Causler and Hill were part-

ners, and that their partnership transactions embraced sales of merchandise, and the purchase or ownership of lands, and possibly some other things.

We do not think the statute of limitations is a bar to the present suit. The agreement or obligation signed by Hill, shows that the joint or partnership dealings, at least to the extent of the property therein described, were not closed. Other witnesses speak of admissions made by Hill, that certain claims were of the partnership effects. The receipts, or obligation—exhibit A to the bill—furnishes written evidence that Causler had a continuing, unsettled interest in the property therein described; and that it was left in the hands of Hill, with authority to him to sell the same, whenever he might be able to do so at fair prices. It was evidently contemplated that this trust and power should continue until Hill could make sale of the property, and the proof shows that he continued to make sales, collect dues and rents, up to a short time before his death in 1871. The statute of limitations does not bar the claim set up in this bill for an account of the partnership dealings.—*Bradford v. Spyker*, 32 Ala. 134.

The receipt or agreement—exhibit A to the bill—contains the following clause, or recital: "As there is yet an undivided interest not disposed of—some of said property, or effects, in the name of O. P. Hill, and some in the name of O. P. Hill & Co.—the interest in said property being equal; and the said Thomas H. Causler, desirous of removing west, leaves all of said property in the hands of his former partner to be sold, whenever he, the said O. P. Hill, can or may be able to do so at fair prices. And the following is a statement of the property, both real and personal, to-wit;" going on to describe certain real property and two slaves. This recital, unexplained, would indicate that all other partnership property, real and personal, had been disposed of. Speaking of the eighteen hundred dollars which Causler admits Hill paid him on the eve of the former's leaving for Texas, he, Causler, says: "Hill obligated himself to give me eighteen hundred dollars at a certain time. If he did not have it belonging to the firm, he was to pay it out of his own funds; or, I would give him same amount." On being asked to explain how Mr. Hill was to be reimbursed after paying the $1,800, this witness, complainant, answered: "I don't know how it was.' We confess ourselves unable to explain the foregoing language, unless it means this: that all the partnership effects, except the lands and slaves described in the receipt or agreement as "not disposed of," were embraced in a settlement or agreement, by which one

partner was to give the other eighteen hundred dollars for his share. We know not how else to explain the language, that Hill was· to pay Causler $1,800 at a certain time, or Causler would give him same amount. It sounds very like the offer to "give or take," frequently heard between joint owners, in negotiations for a sale by one to the other. True, this witness says : "Hill did not give me the $1,800 and half interest in lands, mentioned in the bill, for my interest in notes and accounts due the firm." This language, literally interpreted, is consistent with our suggestion above ; for on that theory, Hill was giving the $1,800 alone, for Causler's interest in the notes and accounts ; not $1,800 and half interest in the lands. This witness makes other statements tending to show that the $1,800 was paid to him by Hill on account, and not in the purchase of Causler's interest in the notes and accounts. The witness, Woodliff, testifies that in 1867 Hill informed him that he, the witness, owed Hill & Co., Hill & Sulser, and O. P. Hill. This, however, may have been only a description of the different forms of indebtedness, and not intended to affirm that Causler still held an interest in the claim. On the unaided testimony in this record, we do not think Hill's estate should be held to account for any assets of the partnership, save the lands and slaves described in the receipt or agreement, and the rents and products thereof. Nor should Causler be held accountable for the $1,800. This statement, however, is made on what appears in this record. The account books, and the letter from Hill to Causler, spoken of in the note of the evidence before the Register, are, no part of them, copied in this record. They, and possibly other testimony, may show that the $1,800 were paid to Causler only on an account, and that he, Causler, still was interested in the notes and accounts. If so, our intimations above will go for nothing.

Should it become necessary to go into the general partnership dealings, as was done in the former hearing before the Register, we feel it our duty to point out an error into which the Register fell in his former accounting. It consists in the double use made of the $1,800 item. That item was treated, and rightly treated, as part of the partnership assets. It was charged, and rightly charged, as received and used by Causler. But then, it was part of the gross sum of $10,525.71 of assets, with which Hill was charged. This brought it into the account of assets received, as a charge against each of the partners, and consequently overstated the gross assets by eighteen hundred dollars. If Hill received $10,525.71 of gross assets, he turned over $1,800 of that sum to Causler, and thus reduced his gross receipts to $8,725.71, from which

should be deducted his disbursements. This will show a balance of assets, after deducting disbursements, of $1,800 less than the sum the Register would report on the other basis.

The witness, Causler, should not have been permitted to testify as to any transaction with, or statement by Hill, defendant's intestate, unless he was first interrogated thereto by the opposite party. And the fact that he was put on the witness stand, and interrogated by the defendant in relation to other matters, does not in the least vary the rule.— Code of 1876, § 3058 : *Tisdale v. Maxwell,* 58 Ala. 40 Of course, if he had been first interrogated by opposing counsel as to such transactions with, or statements by Mr. Hill in his lifetime, then cross-examination in his own behalf would have been legitimate, not otherwise.

Inasmuch as all the evidence used in the court below is not found in the present transcript, we are unable to lay down absolute rules for taking the account.

Reversed and remanded.