*851 OPINION.
Maequette:
The transaction which gave rise to the income involved in this appeal is the identical transaction which was before ' the Board in the Appeal of W. C. Bradley, 1 B. T. A. 111. In that appeal we held that the receipt by Bradley, upon the completion of the financing of the Coca-Cola Company of Delaware by the Trust Company of Georgia and the other members of the Bankers Syndicate, of 50 shares of the common stock of the new company for $5 per share, constituted a taxable dividend to him to the extent of the;, difference between the alleged purchase price and the fair market! value of such shares; which difference was found to be $1,750. However, the evidence presented in that appeal did not as fully disclose the nature of the transaction as does the evidence herein, and we are constrained to a different conclusion here.
First, we are of the opinion that whatever income the taxpayers realized from the transaction in question came to thém not as a dividend from the Trust Company of Georgia, but as a direct result of their participation in the transaction. The evidence establishes that the Trust .Company of Georgia, under the agreement forming the Bankers Syndicate, was obligated to the extent of $4,500,000. The directors of the Trust Company were of the opinion that the financial strength of the Trust Company did not warrant it in assuming the obligation of $4,500,000, and they therefore authorized the Trust Company’s participation in the syndicate only in the event that at least one-half of its obligation thereunder would be assumed by others. The stockholders of the Trust Company were given an opportunity to come into the enterprise and many of them, but not all, accepted. With the exception of Woodruff, they were permitted to participate according to their holdings in the Trust Company, that is, for each share of stock they owned in the Trust Company they were permitted to put $195 into the financing of the Coca-Cola Company of Delaware. Woodruff, however, in addition to investing in the enterprise $195 for each share of stock owned by him in the Trust Company of Georgia, assumed an additional obligation of several hundred thousand dollars. Some of the stockholders of the Trust Company declined to participate in the transaction and they received nothing therefrom. While it is obviously true that the taxpayers were given the opportunity to engage in the transaction because they were stockholders of the Trust Company, it is equally true, we think, *852 that they shared in the profits of the transaction not as stockholders receiving a dividend, but because they participated in and contributed money to the transaction. We think the evidence presented here cleaiiy establishes that the taxpayers were joint venturers with the Trust Company of Georgia, and that they shared in the profits due to the Trust Company under the original syndicate agreement to the extent and in the proportion that they assumed and shared the liability of the Tr'ust Company under that agreement.
The only remaining question is what profit, if any, was realized by the taxpayers as a result of their participation in the organization of the Coca-Cola Company of Delaware. The taxpayers contend that the Bankers Syndicate in reality purchased the entire issue of 500,000 shares of the common stock of the Coca-Cola Company of Delaware for $15,010,000, paying $35 per share for 417,000 shares and $5 per share for 83,000 shares; that the 417,000 shares were sold by the Bankers Syndicate to the Common Stock Syndicate for $35 per share, no profit thereon being realized by the Bankers Syndicate; that at the conclusion of the transaction, the various members of the Bankers Syndicate simply retained the 83,000 shares of stock for which they had paid $5 per share and that only upon the sale thereof could there be any profit or loss.
We are unable wholly to agree with the taxpayers’ contention. We are of the opinion, however, that the Bankers Syndicate was in reality the purchaser of all of the common stock of the Coca-Cola Company of Delaware. At the time of the several steps in the stock selling campaign, outlined in the findings of fact, the Coca-Cola Company of Delaware was not in existence but, under the terms of the original syndicate agreement, was later to be brought into existence by the Bankers Syndicate, which had obligated itself to the extent of $15,000,000 for the organization and financing of the new corporation. The Bankers Syndicate was in fact at that time the corporation and in its dealings with the corporation in regard to the issues of stock was in reality dealing with itself. It could arrange the sale and set the price to suit itself. However, for the purpose of determining its profit therefrom we are unable to hold that it could properly fix a price of $35 per share for part of the common stock and $5 per share for the remainder thereof.
All of the shares of common stock were of the same issue and each share had the same actual value. The effect of the arbitrary fixing of the price of $35 per share for 417,000 shares was that it enabled the syndicate to make a sale of the 417,000 shares at more than their real cost, yet without any apparent profit, and to retain the remaining 83,000 shares at their apparent cost of $5 per share, which was in fact much less than their real cost. '
*853 ■In our opinion, the whole transaction involved in this appeal may be resolved into this: the Bankers Syndicate obligated itself to form the Coca-Cola Company of Delaware and to put up $15,000,000, in consideration of which it was to acquire the entire issue of common stock, the cost to it of such common stock being $30 per share. Four hundred and seventeen thousand shares of the common stock were sold by the Bankers Syndicate to the Common Stock Syndicate for $35 per share, which in turn sold it to the public for $40 per share. ' The Bankers Syndicate therefore realized a profit of $5 per' sharé on the 411,000 shares and retained 83,000 shares for which it had actually paid $30 per share but for which it fixed an apparent price of $5 per share. The profits realized by the Bankers Syndicate from the sale of 417,000 shares together with the 83,000 shares retained by it were distributed among its members. The taxpayers herein, for each $195 invested by them in the enterprise, received on-the completion thereof $190 and a share of stock which cost them $30. * In other words, for each $195 they invested, they realized a cash profit of $25. The so-called $5 shares of stock received by them in fact cost them $30 per share and on the sale thereof a gain or loss would be realized or sustained, depending on whether the sale price was greater or less than $30 per share.

Order of redetermination will be entered on 15 days’ notice, under Rule 50.

Littleton, Milliken, Philmbs. and Smith dissent.