Considered by TRUSSELL and LITTLETON.

---

ALGER MELTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5699. Promulgated July 26, 1927.

1. PARTNERSHIP OR JOINT VENTURE.—Upon the evidence, *held* that respondent erred in treating Ed Sheegog & Co., as a partnership rather than as a joint venture. The petitioner, being one of the joint adventurers rather than a partner, is therefore taxable on actual receipts rather than on an undistributed share of profits.

2. DIVIDENDS.—Upon the evidence, *held* that petitioner was not a stockholder in the Fisher-Whaley Oil Co.

3. CONFLICT OF LAWS.—Whether a partnership exists between certain individuals who agree in one State to buy and operate an oil lease in another State is governed by the laws of the State where the agreement is made rather than the State where the agreement is to be carried out.

*Alger Melton, Esq.,* and *Hubert L. Bolen, Esq.,* for the petitioner. *M. E. McDowell, Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of his income-tax liability for the calendar year 1919 for which the Commissioner has determined a deficiency of $4,445.88. The errors assigned are that the respondent erred in including in the petitioner's income $23,930 as representing the petitioner's one-fourth share of the alleged distributive income of the so-called partnership of Ed Sheegog & Co. and $372 as representing a cash dividend from

the Fisher-Whaley Oil Co. Of the total amount alleged to have been erroneously included in income, the amount of $23,746.82 was arrived at by the Commissioner on the theory that Ed Sheegog & Co. was a partner in three other so-called partnerships, and that Ed Sheegog & Co.'s distributive share in the income of each of such concerns was:

| | |
|---|---|
| Turner & Sheegog | $64,011.14 |
| T. B. Noble & Co | 27,428.98 |
| J. A. Fisher & Co | 3,547.17 |
| Total | 94,987.29 |
| Petitioner's one-fourth interest | 23,746.82 |

### FINDINGS OF FACT.

The petitioner is a practicing attorney residing at Chickasha, Okla. Among the petitioner's friends and business associates in the city were Messrs. Sheegog, Erwin, and Cralle, engaged in the oil, land, and furniture businesses, respectively. During July, 1917, Sheegog and Erwin went to Texas and purchased for $2,400 an oil and gas lease on 160 acres of land in Wichita County, known as the Beach lease. Upon their return to Chickasha they offered to sell one-half of their respective interests to the petitioner and Cralle at cost. The offer was accepted by both the petitioner and Cralle and the sale made.

It was then verbally agreed between the four owners of the Beach lease that they would contribute in equal shares an amount of money sufficient to enable Sheegog to drill a well on the lease to test the shallow sand. None of the four was to invest or to be called on to invest any more money in the enterprise than was necessary to drill the first well. It was further agreed that if Sheegog developed a producing well he should proceed to further develop the lease and each should receive one-fourth of whatever profits resulted from the operation. Sheegog was to have full charge of all operations and to keep books and accounts showing the result of such operations. Neither Melton, Erwin nor Cralle was to have anything to do with the management or operation of the lease in any way.

Sheegog took the money, went to Texas and began operations. His first drilling operation resulted in a producing well at about 200 feet depth and he then proceeded with the drilling and "brought in" several small producing wells.

During 1918, Sheegog sent his personal check for $2,000 to the petitioner, advising him that that amount represented the petitioner's share of the profits from the operation of the Beach lease up to that time. No further distributions from the Beach lease were received until the year 1923, when one check for $37 and another

for $73 were received. The petitioner reported these amounts in his 1918 and 1923 returns, respectively, and paid tax thereon. No further distributions from this lease have been received by the petitioner.

The petitioner requested Sheegog to furnish a statement of the results of the operation of the Beach lease at different times, and each time received a promise that such statement would be prepared and furnished at an early date, but no such statement or any other statement was ever furnished.

Sheegog died in February, 1925. An investigation made by the petitioner after Sheegog's death disclosed that no separate books or records of the operation of the Beach lease had been kept by Sheegog, and that the Beach lease had been operated in his own name and all receipts had been handled through Sheegog's personal bank account. Sheegog's estate is insolvent.

The Commissioner determined that Sheegog & Co. was a partnership. He likewise determined that the partnership of Sheegog & Co. was a member of three other partnerships, each of which had net income during the taxable year. The net income of Sheegog & Co. he determined as follows:

| | |
|---|---:|
| Net earnings of Beach lease | $732.74 |
| Distributive share income of Turner & Sheegog | 64,011.14 |
| Distributive share income of T. B. Noble & Co | 27,428.98 |
| Distributive share income of J. A. Fisher & Co | 3,547.17 |
| Total | 95,720.03 |

Upon the theory that Sheegog & Co. was a partnership, that the petitioner herein was a member thereof, and that its net income was $95,720.03, he determined that the petitioner's distributive share of such partnership's net income was one-fourth thereof, or $23,930, and accordingly added such amount to the petitioner's net income.

While operating the Beach lease Sheegog, as an individual, and W. A. Turner, an individual who had drilled a number of the wells on the Beach lease, purchased an oil and gas lease on a tract of land containing 300 acres located south of the Beach lease and known as the Roller lease. This lease was purchased under a deferred payment plan. Before the payments had been completed, Sheegog, while in Chickasha, Okla., advised the petitioner, Cralle, and Erwin that he and Turner had each purchased a one-half interest in this lease, and that it seemed that the transaction would be profitable. He further stated that it might be necessary for him to use some of the money received from the sale of the oil produced from the Beach lease to pay for his interest in this Roller lease. He advised that he would pay to each interested party a proportionate part, based

on the amount of the Beach lease money used, if any, of the profit received by him on this lease, if any.

The petitioner, Cralle, and Erwin did not intend to or give their consent to become partners in the partnership known as Turner & Sheegog, neither did they intend for nor give their consent for Sheegog & Co. to become a partner in the partnership known as Turner & Sheegog.

Turner, one of the partners of Turner & Sheegog, had no agreement or understanding with either the petitioner, Cralle, or Erwin relative to their becoming partners in this concern, or Sheegog & Co. becoming a partner in this concern.

The petitioner, Cralle, and Erwin had no connection with the business transacted by the partnership of Turner & Sheegog and were not consulted regarding the conduct of the business and were not treated as partners by either Turner or Sheegog.

No transfer or assignment of any interest in the Roller lease was made by Sheegog to either the petitioner, Cralle, or Erwin. Turner was not advised and had no knowledge that these three individuals were to share in such profit or that they were interested in the transaction in any way.

The petitioner was not advised by Sheegog that any profit was made on this lease and did not receive any distributions of profit from this transaction at any time. The petitioner had no knowledge of any profit being made on this transaction until advised by the Treasury Department in its so-called 30-day letter.

The petitioner introduced in evidence a letter from Sheegog to Erwin dated August 24, 1920. This letter was written on a business letterhead of " Turner & Sheegog, Oil Producers, Wichita Falls, Texas," on which was printed " W. A. Turner " in the upper left-hand corner and " Ed Sheegog " in the upper right-hand corner.

While in Chickasha on or about June 1, 1919, Sheegog advised the petitioner, Cralle, and Erwin that he had purchased an interest in a certain oil and gas lease and that through this purchase had become a member of an organization known as T. B. Noble & Co. He explained that he owed a balance of about $4,500 on the purchase price of this lease or leases, and that if the three individuals would advance the money to him to be used to pay this balance he would pay each of them one-fourth of the net profit received by him on this transaction. Cralle declined this offer. Erwin and the petitioner verbally agreed with Sheegog that they would furnish him with $4,500 provided he would repay that amount out of the money received by him through this transaction and then pay each one-third of the profits received by him. Sheegog agreed to this arrangement, and the $4,500 was advanced to him.

The petitioner and Erwin did not intend to give, and did not give, their consent to become members of T. B. Noble & Co., and did not intend for, or give their consent for, Sheegog & Co. to become a member of T. B. Noble & Co. Cralle did not agree to take any interest in T. B. Noble & Co., and made no investment in this concern either directly or indirectly, and had nothing whatever to do with the transaction carried on by T. B. Noble & Co., and did not give his consent to the concern known as Sheegog & Co. becoming a member of, or acquiring any interest in, the organization known as T. B. Noble & Co.

The petitioner and Erwin had no connection with the business transaction with T. B. Noble & Co. and were not consulted regarding the conduct of this business and were not treated as members by any of the members of this organization.

On or about June 19, 1919, the $4,500 was returned to the petitioner and Erwin by Sheegog's personal check. During January, 1920, Sheegog sent the petitioner and Erwin each his personal check for $4,000 and advised them that this amount was their one-third of the profits from the T. B. Noble & Co. transaction. No other amount was ever received by the petitioner from Sheegog or from T. B. Noble & Co. on account of this transaction.

The petitioner had no knowledge of, and took no part in, any of the transactions carried on by T. B. Noble & Co. He did not know who the interested parties were and was not known as one of the partners to the transaction.

The petitioner never at any time made any agreement of any kind with, or with reference to, J. A. Fisher & Co.; never invested any money therein; never received any money or its equivalent from it; and had nothing to do with it or its operations.

An examination of the personal records of Sheegog made after his death by Cralle disclosed that Sheegog had withdrawn from the enterprise of Ed Sheegog & Co. for his own personal use $27,598.23 in 1919, and $24,742.90 in 1920.

The business transactions of Ed Sheegog & Co. were all conducted in the individual name of Sheegog.

The Commissioner also increased the petitioner's income for 1919 by $372 as representing a cash dividend from the Fisher-Whaley Oil Co. The petitioner was not one of the stockholders of the Fisher-Whaley Oil Co. and received no money or distributions of any kind from that source. The stockholders of this corporation were the same as the members of T. B. Noble & Co.

OPINION.

GREEN: Two issues are presented in this appeal. First, did the respondent err in including $23,930 in the petitioner's income for

1919, which action was taken on the theory that he, Sheegog, Erwin, and Cralle had formed a partnership in 1917, each having a one-fourth interest, and that this so-called partnership was in turn a partner in three other partnerships? Second, did the respondent err in including $372 in the petitioner's income for 1919 as a cash dividend determined by the Commissioner to have been received by the petitioner from the Fisher-Whaley Oil Co.?

We have found as a fact that the petitioner was not a stockholder of the Fisher-Whaley Oil Co. and received no money or distributions of any kind from that source. It follows that the respondent was in error in including $372 in the petitioner's income as a cash dividend from this corporation.

In connection with the first issue, section 218 (a) of the Revenue Act of 1918 provides in part as follows:

That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.

The term "partnership" as used in section 218, *supra*, "refers only to ordinary partnerships." *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; 46 Sup. Ct. Rep. 48; 5 Am. Fed. Tax Rep. 5663.

If the net income of Ed Sheegog & Co. for 1919 was $95,720.03 and if Ed Sheegog & Co. was in fact and in law a partnership during 1919, then in accordance with section 218 (a), *supra*, the petitioner should be taxed on his distributive share of such profits, regardless of the fact that he actually received no part of the $23,930 in 1919.

The oral agreement of the petitioner, Sheegog, Erwin, and Cralle in connection with the Beach lease was made in the State of Oklahoma. It was, however, to be carried out in the State of Texas. Would the Oklahoma or Texas law govern as to the interpretation of the agreement and the determination as to whether an ordinary partnership existed between the parties? The Supreme Court of the United States in *Scudder* v. *Union National Bank*, 91 U. S. 406, at page 412 states:

Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.

See also *Gaston, Williams & Wigmore of Canada, Ltd.* v. *Warner*, 260 U. S. 201.

This being a matter bearing upon the interpretation of the agreement the determination as to whether a partnership existed between the parties will be governed by the Oklahoma law.

Chapter 71 of the Compiled Statutes of Oklahoma provides in part as follows:

8103. Partnership defined.—Partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them.

8104. Consent necessary—information. A partnership can be formed only by the consent of all parties thereto, and no new partner can be admitted into a partnership without the consent of every existing member thereof.

8117. General partnership defined.—Every partnership that is not formed in accordance with the law concerning special partnership, and every special partnership, so far as the general partners are concerned, is a.general partnership.

In its discussion of the definition of a partnership as outlined under section 8103 *supra*, the Supreme Court of Oklahoma, in the case of *Citizens' Nat. Bank of Chickasha* v. *Mitchell*, 24 Okla. 488; 103 Pac. 720, at page 726 holds as follows:

A partnership exists as a result of a voluntary contract between the parties, and never solely by operation of law. *Causler* v. *Wharton*, 62 Ala. 358; *Cowles* v. *Garrett*, 30 Ala. 341; *Haycock* v. *Williams*, 54 Ark. 384, 16 S. W. 3; *Einstein* v. *Gourdin*, 4 Woods 415, 8 Fed. Cas. No. 4, 320; 22 Am. & Eng. Ency. of Law (2d 3d.) p. 14, footnote 3. It is a relation, arising out of a contract to do certain things, and exists only where the parties intend to enter into a contract of partnership, and, unless they have estopped themselves by holding themselves out to the world as partners, their intention as derived from the contract is decisive of the question.

Tenants in common are not partners in Oklahoma. *Perry* v. *Jones*, 48 Okla. 362; 150 Pac. 168.

In *Gorman* v. *Carlock*, 179 Pac. 38, the Supreme Court of Oklahoma, in deciding that certain individuals interested in a certain oil lease were not partners, said, *inter alia:*

Whether a general partnership in oil leases in the Healdton field was formed by the plaintiffs and defendants was the principal question at issue, and the general judgment for the defendants embraces the finding that such alleged partnership was never entered into between the parties. It is apparent that such finding is not clearly against the weight of the evidence, for, as heretofore stated, defendants testified that instead of there being a general partnership agreement, the understanding was that the plaintiffs and defendants were to be co-owners and equally interested only in the particular leases that all agreed to take. *It is a well recognized principle of law that a mere community of interest as owners of specific property, or of the profits from a particular adventure or business, does not necessarily constitute the co-owners partners.* (Italics ours.)

A joint adventure has been defined as a " special comb ation of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation."

33 C. J. 841, citing *In re Desnoyers Shoe Co.*, 224 Fed. 372; 140 C. C. A. 58.

In our opinion the petitioner and his three associates in buying and operating the Beach lease, under the circumstances set out in the findings of fact, did not thereby create a partnership but operated the property only as a joint adventure. *Appeal of Florida Grocery Co.*, 1 B. T. A. 412; *Appeal of Ernest Woodruff*, 4 B. T. A. 842. Either of the parties here could have sold their interest in the Beach lease without the consent of the others. They never intended to form a partnership. The petitioner, Erwin, and Cralle were all in separate businesses by themselves. The following excerpt from the petitioner's testimony shows that similar ventures were quite common in the oil business:

> At the time this Beach lease was purchased there was considerable oil development and operation around over the country and it was a very frequent thing that a man would come in and say, "I have bought a lease. Do you want to take an interest with me?" or "I have bought this or that" and one or two or three or four would say, "Yes, I will take a little interest," and they would. Now I never intended and it was taken on the same basis with the other three, they did not intend that this would be a joint partnership. In fact it was never operated as such and these transactions here were had on that same basis, the same intention of the parties, all taking these interests.

The respondent argues that had a third party been injured by the negligence of an employee of Ed Sheegog & Co. there could have been no question but that the petitioner as well as the three associates would have been personally liable. Such liability may also exist in a joint venture. Its existence alone does not create a partnership within the meaning of that term as used in section 218 (a) of the Revenue Act of 1918.

Since we have decided that Ed Sheegog & Co. was not a partnership it becomes unnecessary to determine whether it was a partner in the Turner, Noble, and Fisher companies. The petitioner clearly was not a partner in any of these concerns. His relationship with respect to Turner & Sheegog and T. B. Noble & Co. was no more than that of a joint adventurer. He had no relationship whatever with J. A. Fisher & Co.

In our opinion, the respondent erred in including the $23,970 in petitioner's income for the year 1919.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.